*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. LIEFFERS, Minor.

UNPUBLISHED
July 25, 2019

No. 346658
Newaygo Circuit Court
Family Division
LC No. 17-008989-NA

Before: SAWYER, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to the minor child under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist). We affirm.

The Department of Health and Human Services (DHHS) received a complaint from a hospital in late July 2017 indicating concerns about the minor child. The minor child was born with opioids and methadone in his system. The mother also tested positive for drugs and was homeless. Respondent, the father, was incarcerated in Newaygo County Jail because he violated his probation in a domestic violence altercation. Respondent was also awaiting trial on a number of other felony matters and, according to several sources, was abusing a number of drugs. Because respondent was incarcerated and the mother was homeless, the trial court granted temporary custody of the minor child to the maternal grandmother.

The DHHS created a reunification plan for respondent that was intended to help him regain custody of the minor child. However, over the course of the next 14 to 15 months, respondent did not participate in recommended services and failed to write to the minor child during his incarceration. Although one of his convictions was reversed, respondent was also recharged on new felonies, including first-degree home invasion as a habitual offender. In September 2018, the DHHS petitioned the trial court to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist) because respondent failed to remedy his incarceration, substance abuse, domestic violence, and criminality.

Respondent argues that there was insufficient evidence presented to terminate his parental rights. "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re Vanderlin*, 293 Mich App 120, 139; 809 NW2d 412 (2011).

We review for clear error a trial court's factual determination that statutory grounds exist for termination. *Id.*; MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). In addition, we give "deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

We conclude that the trial court did not clearly err in finding that the conditions which led to adjudication continued to exist under MCL 712A.19b(3)(c)(*i*).

Under MCL 712A.19b(3)(c)(*i*) a court may terminate a parent's parental rights if it finds, by clear and convincing evidence, that "182 or more days have elapsed since the issuance of an initial dispositional order," and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."[1] We have held that termination of parental rights was proper pursuant to MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence amply support[ed] that [the respondent] had not accomplished any meaningful change in the conditions" that led to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). We have also specifically recognized that a respondent's ongoing incarceration may be a condition under MCL 712A.19b(3)(c)(*i*) sufficient to uphold termination. *In re McIntyre*, 192 Mich App 47, 51; 480 NW2d 293 (1991).

Respondent argues that the trial court's adjudication focused solely on respondent's continued incarceration in violation of *In re Mason*, 486 Mich 142, 164-165; 782 NW2d 747 (2010). In *Mason*, our Supreme Court held that incarceration and criminal history alone are not grounds for termination of parental rights. *Id*. This Court has subsequently expanded *Mason* to a respondent's reincarceration, holding that being convicted and incarcerated a second time is insufficient to terminate parental rights under MCL 712A.19b(3)(c)(*i*). See *In re Pops*, 315 Mich App 590, 599; 890 NW2d 902 (2016). Therefore, if the sole reason for adjudication was respondent's incarceration (whether ongoing or at the beginning of adjudication), there was insufficient evidence supporting the statutory ground of termination.

However, although a "present inability to care for one's minor children due to incarceration alone is not a ground for termination, incarceration was not the sole reason for termination in this case." *In re Hudson*, 294 Mich App 261, 267; 817 NW2d 115 (2011) (considering imprisonment and surrounding circumstances under MCL 712A.19b(3)(h) in light of *Mason*). Respondent failed to develop a bond with the minor child despite having received the opportunity to develop one with the assistance of the DHHS.

---

[1] Respondent does not contest that "182 days or more have elapsed since the issuance of an initial dispositional order." MCL 712A.19b(3)(c). The initial dispositional order was entered on October 4, 2017. Therefore, 182 days or more elapsed between the entry of the dispositional order and the termination decision.

Although it is true that the trial court's final ruling discussed respondent's incarceration, we consider child protective proceedings "as one continuous proceeding." *In re Hudson*, 294 Mich App at 264. Therefore, respondent's plea of no contest to the allegations contained in the first amended petition became evidence in this case. *Id.* This included an admission by respondent to "neglect, cruelty, drunkenness, criminality, or depravity." See MCL 712A.2(b)(2). Therefore, respondent is incorrect in saying that the only condition supporting the trial court's original adjudication was his incarceration.

Testimony regarding respondent's substance abuse, domestic violence, and criminality were all presented at the termination hearing before the trial court, as was the respondent's lack of engagement with programs intended to mitigate these concerns. Evidence was presented at the termination hearing showing that the DHHS made plans and recommendations for respondent to follow. The DHHS also made accommodations to defendant's incarceration, suggesting that he participate in prison programs. It also provided supplies for the purpose of writing letters and drawing pictures to send to the minor child for the purpose of building a bond. Respondent provided little to no documentation of his participation or follow through on the prison programs he allegedly applied to. In addition, respondent sent one letter over the course of 14 months despite this option being readily available to him. There was no follow through by respondent in addressing the underlying concerns in this case. Although incarceration alone may not form the sole basis of a termination, a respondent's failure to engage in and follow through with the parent-agency treatment plan to remedy circumstances while incarcerated may form the basis for a termination under MCL 712A.19b(3)(c)(*i*), so long as respondent has been allowed meaningful participation in the trial court's proceedings.[2] Therefore, respondent's case is factually distinct from *Pops* and *Mason*, in that incarceration alone was not the ongoing circumstance of adjudication under MCL 712A.19b(3)(c)(*i*).

In addition, although *Mason* prohibits incarceration and criminal history from being the sole basis for termination, it does not prohibit its consideration at all. In this case, respondent was incarcerated throughout proceedings in a variety of correctional facilities, and by the termination hearing was in Newaygo County Jail for two more pending criminal matters, including first-degree home invasion as a third-offense habitual offender. This was in spite of the DHHS's attempts to provide him with programming, and this lack of progress by respondent was the ultimate basis of the trial court's finding of sufficient evidence. The trial court explicitly noted the limitations that respondent's incarceration imposed on him, but it still found that there was insufficient progress in that context.

Considering the 15 months of opportunity to remedy the nonincarceration conditions, the trial court did not clearly err in finding that respondent's substance abuse, domestic relations, and criminality continued to exist and that "there [was] no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*).

---

[2] Although respondent was incarcerated throughout these proceedings, he meaningfully participated in every hearing by appearing either in person or via telephone.

Respondent next argues that the trial court clearly erred in finding that termination of his parental rights was in the child's best interests. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White Minors*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citation omitted). Furthermore, the trial court may also consider how long the child has lived in the present home and the likelihood that the child "could be returned to [the] parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

In this case, the trial court did not err in finding that termination of respondent's parental rights was in the minor child's best interests. The trial court found that respondent failed to follow his case service plan by participating in prison programs or writing to his son. Because of respondent's incarceration, the DHHS created a reunification plan focused on letter writing and internal prison services that respondent would engage in. However, respondent did not provide documentation of any engagement with any of the recommended services, although he claimed without evidence to have recently begun additional services. Although respondent also claimed that he sent as many as five letters to the minor child, the DHHS only received one in 15 months, and this single letter was addressed to the DHHS rather than the minor child. Respondent presented no evidence to mitigate these allegations that he did not engage with the minor child. In light of "the trial court's special opportunity to observe the witnesses," we defer to the trial court's determination that the DHHS was correct regarding respondent's lack of engagement. *In re BZ*, 264 Mich App at 296-297. This lack of bond with the minor child, refusal to remedy it, and refusal to participate in programs intended to prepare him for parenthood, weigh heavily against respondent.

In contrast, the minor child developed a strong bond with his maternal grandmother caregiver and step-grandparent caregiver, to the point that he viewed them as his parents. Both were willing to adopt and provide permanency for the minor child. The trial court heard testimony from the maternal grandmother, who described the minor child's home as a stable environment where he lived since his birth. The trial court did not err in finding that a later removal of the minor child to respondent, a virtual stranger, would not have resulted in a stable environment for the minor child. There was a preponderance of the evidence present in the record supporting the trial court's findings. Therefore, the trial court did not err in finding that termination was in the best interests of the minor child.

Affirmed.

/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro

-4-